**Emilia DIAZ on Behalf of Dauris PENA, Plaintiff,**

**v.**

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.[1]**

**No. 96 Civ. 1581(LAK).**

United States District Court, S.D. New York.

Feb. 23, 1998.

---

1. Kenneth S. Apfel was sworn in as Commissioner of Social Security on September 29, 1997. He is therefore substituted as defendant in this action, pursuant to Fed.R.Civ.P. 25(d)(1).

Emilia Diaz on behalf of Dauris Pena, pro se.

Linda A. Riffkin, Asst. U.S. Atty., Mary Jo White, U.S. Atty., New York City, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff Emilia Diaz, on behalf of her minor son Dauris Pena, brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) challenging the final determination of the Commissioner of Social Security ("Commissioner") denying her application for disabled child Supplemental Security Income ("SSI") disability benefits. Pending before the Court is the Commissioner's motion for judgment on the pleadings. For the reasons set forth below, the Court grants Commissioner's motion and dismisses the complaint.

*Background*

*Prior Proceedings*

On April 29, 1993 plaintiff applied for SSI disability benefits on her son's behalf, apparently on the ground that Dauris suffered from stomach pain and kidney problems.[2] Plaintiff's application was denied on June 29, 1993, based in part on Dauris' medical records from Lincoln Hospital.[3] On September 23, 1993, plaintiff requested reconsideration of her application, which request was denied on February 11, 1994.[4] Plaintiff's request for a hearing before an Administrative Law Judge ("ALJ") was granted, and the hearing was held on February 7, 1995.[5] On June 21, 1995, the ALJ ruled that Dauris was not disabled.[6] This determination became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for a review on December 8, 1995.[7]

*Facts of Record*

The Court begins its review with a summary of the relevant facts concerning Dauris'

---

**2.** Tr. 56, 63 ("Tr." refers to the administrative record filed by the Commissioner as part of her answer pursuant to 42 U.S.C. § 405(g)).

**3.** *Id.* at 63.

**4.** *Id.* at 64.

**5.** *Id.* at 27–55.

**6.** *Id.* at 17–26.

**7.** *Id.* at 3–4.

medical condition and the extent, if any, to which that condition impacts his functioning.

### 1. Medical Evidence

At the age of two months, Dauris was admitted to Lincoln Medical and Mental Health Center for treatment of dehydration and diarrhea.[8] Within a day or two his condition apparently normalized, as his symptoms had resolved and there were no further complaints from plaintiff.[9] One month later, in March 1992, Dauris was taken to the Pediatric Urology Clinic because of both a urinary tract infection, for which he apparently already was taking antibiotics, and a Grade II reflux.[10] The examining physician concluded that the child was healthy, though he did order continuation of the antibiotic treatment.[11] At a follow-up appointment, it was noted that Dauris had mild nasal congestion.[12] During a subsequent appointment, doctors concluded that Dauris had a ventral hernia.[13] Despite this, the doctors described Dauris as alert and active, and he was observed crawling and smiling.[14] It appears that an operation had been scheduled at some point to treat the hernia, but it later was canceled by plaintiff.[15]

In October 1992, Dauris was referred to the Pediatric Hematology Clinic for examination and treatment of a condition described as "G6PD" deficiency.[16] At that time, doctors again described Dauris as alert and active.[17] The G6PD blood deficiency was noted subsequently by doctors at the Pediatric Clinic in January 1993, at which time it was observed also that Dauris had been vomiting,

and that he had experienced watery stools three times in one day.[18] Dauris was subsequently admitted to Lincoln Hospital on October 20, 1993 for treatment of an ear infection, though he was discharged the next day in stable condition.[19]

At the behest of the Office of Disability Determinations, Dauris was examined by Dr. E. Florez on January 6, 1994.[20] Dr. Florez' report indicated that the two-year-old was "[c]ooperative, alert, well developed, well nourished, [and] in no acute distress."[21] Dr. Florez noted also that Dauris was capable of jumping in place, combining multiple words, participating in interactive games, and scribbling spontaneously, leading the doctor to conclude that Dauris' development was "normal for [his] age."[22] Dr. Florez did note, however, his impression of "recurrent urinary tract infections, urethral reflux, 6 GPD Deficiency, and Epigastric Hernia."[23]

### 2. The Administrative Hearing

The administrative hearing was held on February 7, 1995. The ALJ began by painstakingly ascertaining that plaintiff understood her right to counsel and that she nonetheless wished to proceed *pro se*.[24] Plaintiff indicated also that she understood the purpose of the administrative hearing.[25] The ALJ then examined her on the subject of her son's condition.[26] Plaintiff subsequently made numerous statements relevant to the determination of disability, the first of which was that "the only problem that [Dauris] has

---

8. *Id.* at 104.

9. *Id.* at 107–8.

10. *Id.* at 112.

11. *Id.*

12. *Id.* at 114.

13. *Id.* at 115.

14. *Id.*

15. *Id.*

16. *Id.* at 118.

17. *Id.*

18. *Id.* at 119–20.

19. *Id.* at 146.

20. *Id.* at 123.

21. *Id.*

22. *Id.* at 124.

23. *Id.*

24. *Id.* at 29–33.

25. *Id.* at 33–34.

26. *Id.* at 34.

is the problem in his stomach." [27] She later explained that Dauris still had "the same [hernia] problem." [28] When pressed by the ALJ for an explanation of any other problems Dauris might currently suffer from, plaintiff stated that he had a "problem with his nose that he can't breathe" and, additionally, that he sweated, wet his bed, had a blood problem, a urination problem, and a history of infections including ear infections. [29] Plaintiff elaborated on Dauris' vomiting, explaining that he vomited several times every month. [30] It appears that Dauris was taking antibiotics to treat some or all of these difficulties. [31] When asked if Dauris had any pain and discomfort other than that related to the vomiting, plaintiff said "[n]o. Just to sleep." [32]

The ALJ then attempted to ascertain the extent to which any or all of these difficulties impacted Dauris' life. When asked whether Dauris was able to run and jump around, plaintiff answered in the affirmative. [33] She stated also that Dauris knew how to get on a tricycle, though he did not yet know how to ride one. [34] Plaintiff indicated further that Dauris did not play with other children his own age, but on the other hand, that he did play with his older brother. [35] For example, Dauris and his brother "[s]ometimes [will] be playing around and they'll climb up to the dresser drawer ... to throw themselves on the bed. They jump on the bed." [36] Plaintiff

described Dauris as "like a little man" [37] who "knows a lot" [38] and stated that he was capable of dressing and undressing himself, putting away his own clothes, and going to the bathroom alone. [39]

### Discussion

### Whether the Correct Legal Standard Was Applied

█ It is not the Court's "function to determine *de novo* whether [Dauris] is disabled." [40] Instead, the Court considers only whether the Commissioner's decision is "supported by substantial evidence in the record as a whole or [is] based on an erroneous legal standard." [41] The Court first addresses whether the correct legal standard was applied by the Commissioner.

Prior to August 22, 1996, a child was considered disabled for purposes of SSI benefits if that child suffered from "any medically determinable physical or mental impairment of *comparable severity* " to an impairment that would constitute an adult disability. [42] The regulations implementing this statutory scheme required a four-step analysis of childhood disability claims. [43] In the first step, the ALJ had to determine whether the child was engaged in "substantial gainful activity." [44] If so, the child was not eligible for disability benefits. [45] If not, however, the ALJ would proceed to step two, in which it would be

27. *Id.*

28. *Id.* at 36.

29. *Id.* at 37, 49.

30. *Id.* at 40.

31. *Id.* at 38.

32. *Id.* at 42.

33. *Id.* at 43.

34. *Id.*

35. *Id.* at 41.

36. *Id.* at 43.

37. *Id.* at 45.

38. *Id.* at 47.

39. *Id.* at 44.

40. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996).

41. *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir.1997) (internal quotation marks and citation omitted); *see* 42 U.S.C. § 405(g).

42. 42 U.S.C. § 1382c(a)(3)(A) (1992), *amended by* 42 U.S.C. § 1382c(a)(3)(C) (1997) (emphasis added). An adult is considered to be disabled if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A) (1997).

43. 20 C.F.R. § 416.924(b) (1994).

44. *Id.* at § 416.924(c).

45. *Id.*

determined whether the child suffered from a "severe impairment."[46] If not, then the child would not be eligible for disability benefits.[47] If so, then the ALJ would proceed to step three, in which it would be determined whether the child's "severe impairment" met or equaled an impairment listed in the implementing regulations.[48] If so, then the child would be considered disabled.[49] If not, the child still might be found to be disabled at step four, in which the ALJ would conduct an "individualized functional assessment" ("IFA") to determine whether the child's severe impairment(s) were of comparable severity to that which would prevent an adult from engaging in substantial gainful activity.[50]

It was pursuant to this statutory and regulatory scheme that the ALJ analyzed plaintiff's claim. First, the ALJ determined that Dauris was not engaged in substantial gainful activity after March 29, 1993, the day upon which his application was filed.[51] The ALJ then concluded that Dauris' "epigastric and umbilical hernias" are severe impairments, while his "recurring urinary tract infections" and "urethral reflux" are not.[52] In the third step, the ALJ ruled that Dauris' severe impairments do "not meet or medically or functionally equal any impairment described in Appendix I, Subpart P, Regulations No. 4."[53] Finally, in the fourth step, the ALJ conducted an IFA and determined that Dauris was not impaired in a manner equivalent to that which would disable an adult.[54] As a result of this analysis, the ALJ concluded that Dauris was not eligible for benefits.

Subsequent to this decision, on August 22, 1996, the statutory definition of childhood disability was altered. According to the Responsibility and Work Opportunity Reconciliation Act of 1996 (the "1996 Act"),[55] a disability exists for purposes of SSI benefits if a child under the age of eighteen

"[1] has a medically determinable physical or mental impairment, [2] which results in *marked and severe functional limitations,* and [3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ... [however,] no individual under the age of 18 who engages in substantial gainful activity ... may be considered to be disabled."[56]

The regulations implementing the new definition provide a three-step process for determining eligibility.[57] These steps are practically identical to the first three steps of the four-step analysis required by the prior regulations. In the first step, the ALJ still must determine whether the child is engaged in substantial gainful activity.[58] If so, there can be no finding of disability.[59] If not, the analysis proceeds to step two, which still requires the ALJ to determine whether the child has a severe impairment of combination of impairments.[60] If the impairment(s) constitutes a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," the child will not be found to have a severe impairment. If there is a finding of severe impairment, however, the analysis proceeds to step three, which requires the ALJ to determine whether the impairment(s)

46. *Id.* at § 416.924(d).

47. *Id.*

48. *Id.* at § 416.924(d) (referring to 20 C.F.R. part 404, subpart P, app. 1).

49. *Id.*

50. *Id.* at § 416.924(f).

51. Tr. at 25.

52. *Id.*

53. *Id.*

54. *Id.*

55. Pub.L. 104–193, 1996 U.S.C.C.A.N. (110 Stat.) 2105.

56. 42 U.S.C. § 1382c(a)(3)(C)(i), (ii) (1997) (emphasis added).

57. 20 C.F.R. § 416.924(a) (1998).

58. *Id.* at § 416.924(b).

59. *Id.*

60. *Id.* at § 416.924(c).

"meet, medically equal, or functionally equal in severity a listed impairment in appendix 1. An impairment(s) causes marked and severe functional limitations if it meets or medically equals in severity the set of criteria for an impairment listed in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, or if it functionally equal in severity to a listed impairment." [61]

If this equivalency test is satisfied, and the statute's durational requirement is satisfied as well, then the child will be found to be disabled.[62] Otherwise he will not.[63]

Significantly, Section 211(d)(1)(A)(i) of the 1996 Act provides that the amended definition of childhood disability is applicable

"to any individual who applies for, or whose claim is finally adjudicated with respect to, benefits under title XVI of the Social Security Act on or after the date of the enactment of this Act, without regard to whether regulations have been issued to implement such provisions and amendments."

The 1996 Act further provides that "no individual's claim with respect to such benefits may be considered to be finally adjudicated before such date of enactment if, on or after such date, there is pending a request for either administrative or judicial review with respect to such claim that has been denied in whole...." [64]

■ Plaintiff's original application was filed, and denied, in 1993. Her request for reconsideration was filed in 1993 and denied in 1994. The administrative hearing and the appeal to the Appeals Council took place in 1995. Plaintiff's sought judicial review of the Commissioner's decision on March 5, 1996. The 1996 Act was enacted on August 22, 1996. It is thus clear that plaintiff's claim has not yet been "finally adjudicated" within the meaning of the statute and, consequently,

that final adjudication necessarily will occur "on or after" August 22, 1996. Plaintiff's claim therefore is subject to the amended definition of disability applicable to children as well as the new implementing regulations.

It is clear that at the time of both the administrative hearing and the subsequent ruling, the ALJ followed the then-existing statutory language and implementing regulations. However, the 1996 Act requires that the new statutory language and implementing regulations be applied to this case. Thus, a question arises as to whether the ALJ's analysis is consistent with the new language and regulations.

This issue was noted by the Second Circuit, though it was not then resolved, in *Quinones v. Chater*.[65] Quinones, like plaintiff in this case, filed suit challenging the Commissioner's decision to deny SSI benefits to her child, a decision made prior to the August 22, 1996 modification of the statute.[66] The Circuit noted that there was an issue as to what legal standard the Commissioner's actions should be measured against.[67] The Circuit went on to conclude that it was unnecessary to resolve the issue, as the Commissioner had "agreed to 'waive any argument regarding the applicability of the new childhood disability definition to this case'" in light of the fact that, at that time, no implementing regulations had yet been issued.[68] Thus, *Quinones* simply relied on the prior statutory language and regulations.[69]

It appears that the Commissioner is attempting to make a similar waiver in the present case, as the motion is addressed entirely to the prior statute and implementing regulations and the only reference to the new statute concludes with the statement that the

"Commissioner has not yet promulgated regulations implementing this amendment. Accordingly, should the Court determine

---

**61.** *Id.* at § 416.924(d).

**62.** *Id.* at § 416.924(d)(1).

**63.** *Id.* at § 416.924(d)(2).

**64.** Section 211(d)(1)(A)(ii).

**65.** 117 F.3d 29, 33 n. 1 (1997).

**66.** *Id.* at 30.

**67.** *Id.* at 33, n. 1.

**68.** *Id.* (citing Appellee's Brief at 21).

**69.** *Id.*

that plaintiff should have been found disabled on the basis of the regulations that were in effect at the time the Commissioner's final decision in this case was issued, the Court should remand for further consideration of this case under the amended provisions." [70]

This is a remarkable statement in several respects. As noted above, there actually are new implementing regulations, contrary to defendant's assertion.[71] In any event, the statute specifically states that it is to be applied without regard to whether implementing regulations have been promulgated.[72] Further, the statement appears to suggest that the new language should be applied only if it turns out that the ALJ misapplied the old language, a suggestion that is quite untenable. The Court concludes that neither defendant's statement nor *Quinones* is instructive on this issue.

Other circuits have considered this question in greater detail. The Tenth Circuit, in *Brown v. Callahan*,[73] simply noted that the 1996 Act applies by its own terms to claims not finally adjudicated by August 22, 1996, and that the Commissioner's decision in that case therefore would be reviewed for compliance with the new language.[74] The Circuit first took note of the new implementing regulations and then concluded that the effect of the new legal standard was to remove the final step of the old four-step analysis: "In reviewing the Commissioner's decision, therefore, we do not concern ourselves with his findings at step four of the analysis; we ask only whether his findings concerning the first three steps are supported by substantial evidence." [75]

This conclusion is consistent with the decisions of the two other circuit's which have confronted this issue. In *Jamerson v. Chater*,[76] the Ninth Circuit addressed the issue at a time when the only implementing regulations in effect were "emergency instructions" issued by the Social Security Administration.[77] Those instructions stated that "[a]ny case that would have been denied under the prior standard would also be denied under the new standard." [78] The Circuit went on to review the Commissioner's decision for compliance with the previous standard.[79] Similarly, in *Nelson v. Apfel*,[80] the Seventh Circuit examined the Commissioner's decision simply for compliance with the preexisting standard.[81] In that case, the Circuit noted that interim regulations had been issued instructing that "[u]nder the new law, a child's impairment or combination of impairments must cause *more serious impairment-related limitations than the old law and our regulations required.*" [82] Further, the interim regulations clarified that the use of the word "severe" was meant to reflect that word's common sense meaning, rather than meaning "other than minor." [83]

The Court has no trouble concluding that a disability claim rejected under the prior standard necessarily would be rejected under the new standard. The three steps of the new standard in no way lower the threshold of severity set forth in the first three steps of the prior standard. By removing the fourth step of the old standard, which provided for an alternative means of reaching a conclusion that a child is disabled, the new law actually makes it more difficult for disability claims to succeed. Thus the Court agrees with the approach taken in *Brown,*

70. Def. Mot. at 11 n. 6.

71. 20 C.F.R. § 416.924.

72. 1996 Act, § 211(d)(1)(A)(i).

73. 120 F.3d 1133 (1997).

74. *Id.* at 1135.

75. *Id.*

76. 112 F.3d 1064 (9th Cir.1997).

77. *Id.* at 1066.

78. *Id.* (citing SSA Emergency Teletype No. EM–96–131 § III(a)(5)).

79. *Id.*

80. 131 F.3d 1228 (7th Cir.1997).

81. *Id.*

82. *Id.* at 1334–35 (citing Childhood Disability Provisions, 62 Fed.Reg. 6408) (emphasis added).

83. *Id.* at 1335.

and concludes that the Commissioner's compliance with the prior legal standard was sufficient to satisfy the new standard as well.

*Whether the Commissioner's Decision Was Supported by Substantial Evidence*

■ As noted previously, the Court reviews the decision of the Commissioner not only to determine whether the correct legal standard was applied, but to determine also whether that decision was supported by substantial evidence. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [84] The Court finds that the Commissioner's decision was supported by substantial evidence in all respects.

As to the first step of the analysis, the determination of whether Dauris is engaged in substantial gainful activity, there is no dispute. He was not so engaged.

The second step of the analysis addresses whether the child's impairment(s) is "severe." The ALJ found that of the various problems identified by the medical records and by Dauris' mother, the only "severe impairments" were the "epigastric and umbilical" hernias.[85] There is substantial evidence to support this conclusion. The ALJ specifically stated that there is no support in either the medical evidence or plaintiff's testimony for the proposition that Dauris' blood deficiency or ear infections have imposed "any limitations on his daily life." [86] The same could be said of any of the other ailments identified in the record. While the record makes clear that Dauris indeed has medical problems, there is no evidence that those problems have a limiting impact upon his functioning in daily life. The ALJ did infer that pain related to the hernias reasonably could be said to have such a limiting impact, but made no such inference in regard to the other problems.[87] The Court's review of this matter is limited to determining whether substantial evidence supports the ALJ's fact findings. It does.

■ The third step of the analysis under the prior regime required the Commissioner to determine whether the severe impairment met or was equivalent to a listed impairment.[88] Under the new language, step three requires the Commissioner to determine whether the severe impairment meets, medically equals, or functionally equals a listed impairment.[89] Although he conducted his step three analysis pursuant to the prior regime, the ALJ specifically found that Dauris' "impairment does not meet or medically or functionally equal any impairment described in Appendix 1, Subpart P, Regulations No.4." [90] The only problem with this finding is that it is not directly traceable to any specific analysis in the stated rationale accompanying the ALJ's decision.[91] This is significant, as the Court "cannot ... conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." [92] More specifically, a determination by an ALJ must contain "a sufficient explanation of his reasoning to permit the reviewing court to judge the adequacy of his conclusions." [93] For this reason, "an ALJ's failure to acknowledge relevant evidence or explain its

---

84. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks and citation omitted).

85. Tr. at 25.

86. *Id.*

87. *Id.* at 24.

88. 20 C.F.R. § 416.924(e) (1994).

89. 20 C.F.R. § 416.924(d) (1998).

90. Tr. at 25.

91. *Id.* at 23–25.

92. *Ryan v. Heckler,* 762 F.2d 939, 941 (11th Cir.1985).

93. *Rivera v. Sullivan,* 771 F.Supp. 1339, 1354 (S.D.N.Y.1991); *see also Morgan on Behalf of Morgan v. Chater,* 913 F.Supp. 184, 189 (W.D.N.Y.1996) (a one sentence statement that claim does not meet or equal a listed impairment was insufficient to support the ALJ'S determina-

implicit rejection is plain error."[94] Thus, the Court must consider whether there is any relevant evidence in the record that would support a finding that Dauris' severe impairment either meets, medically equals, or functionally equals an impairment listed in part 404, subpart P, appendix 1 of the regulations ("Listing of Impairments").[95] As there is no such evidence, the Court need not decide whether the ALJ's explanation for his decision constituted error.

There is no credible argument that Dauris' severe impairment is one that meets any of the conditions contained in the Listing of Impairments. Nor is Dauris' condition the medical equivalent of a condition in the Listing of Impairments. According to the new regulations, medical equivalence is identified by comparing "the symptoms, signs, and laboratory findings about [the] impairment(s), as shown in the medical evidence ... about [the] claim, with the corresponding medical criteria for any listed impairment."[96] In this case, there is simply no medical evidence that even arguably supports the conclusion that Dauris' condition is in any relevant sense analogous to the various impairments described in the Listing of Impairments.

This leaves open only the third possibility under step three, which addresses whether a child's severe impairment is the "functional equivalent" of a listed impairment. The new regulations define functional equivalence as concerning "what you cannot do because of your impairment(s), to determine if your impairment is functionally equivalent in severity to any · listed impairment that includes disabling functional limitations in its criteria."[97] More specifically, the goal is to determine whether the child has any disabling functional limitations as a direct result of a medically determinable cause.[98]

With these considerations in mind, there is no evidence that Dauris' severe impairment is the functional equivalent of a listed impairment. The evidence concerning Dauris' functioning reveals that the child. runs, jumps, plays, goes to the bathroom by himself, dresses and undresses himself, puts his own clothes away, desires to go to school, is perceived by his mother to be intelligent, and was found by a doctor to have normal development for his age.[99] The record is devoid of references to any significant limitations, let alone disabling ones, and thus there is no evidence contradicting the ALJ's conclusion which should have been discussed. The Commissioner's decision as to step three is supported by substantial evidence, and is without error.

In the final analysis, plaintiff's claim fails because there is no relevant evidence tending to show that Dauris is disabled within the meaning of the statute, regardless of which statutory scheme controls. It is not without sympathy that the Court reaches this conclusion, for Dauris no doubt suffers from some medical problems, but it is a conclusion that cannot be avoided. The law provides benefits in this context not for all children who have medical problems, but solely for those for whom their medical problems have a disabling impact. This case is not of that variety according to the evidence of record. The decision of the Commissioner therefore was correct.

### Conclusion

For the foregoing reasons, defendant's motion for judgment on the pleadings is granted. Plaintiff's complaint is dismissed, and the decision of the Commissioner is affirmed.

SO ORDERED.

---

tion in light of the presence of considerable contrary evidence).

**94.** *Rivera,* 771 F.Supp. at 1354.

**95.** Although the Court has concluded that the proper framework for analyzing the ALJ's determination is the prior statutory regime, which employs the simpler terminology "meets or equals", the Court will proceed with the "meets, medically equals, or functionally equals" termi-

nology used by the ALJ himself as a finding of disability is no more likely to be made under either of the two approaches.

**96.** 20 C.F.R. § 416.926(a).

**97.** *Id.* § 416.926a.

**98.** *Id.*

**99.** Tr. at 41–47, 124.