**Nurys MALDONADO on behalf of Rogelio MALDONADO, a minor, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**Claudia Olavarria on behalf of Shaun P. Olavarria, Plaintiff,**

v.

**Commissioner of Social Security, Defendant.**

**Nos. 98 Civ. 9037(AKH), 98 Civ. 9038(DC).**

United States District Court, S.D. New York.

July 19, 1999.

Bronx Legal Services by James M. Baker, Bronx, NY, Center for Disability Advocacy Rights, Inc. by Christopher James Bowes, Maura A. Kennedy–Smith, Law Graduate, New York City, for Plaintiff Maldonado.

Legal Services for the Elderly by Ann Pegg Biddle, Malcolm B. Spector, New York City, Bronx Legal Services by James M. Baker, Bronx, NY, for Plaintiff Olavarria.

Mary Jo White, United States Attorney for the Southern District of New York by Susan D. Baird, Assistant United States Attorney, New York City, for United States.

## *OPINION*

CHIN and HELLERSTEIN, District Judges.

These appeals from the denial of applications by minors for social security benefits were brought on their behalves by their parents, who are not attorneys. Relying on Second Circuit decisions holding, generally, that non-attorney parents may not represent their children in litigation, the Commissioner of Social Security (the "government") argues in both cases that the Court must either appoint counsel for the minors, or dismiss their complaints without prejudice if counsel cannot be found. We heard argument and considered the two cases together because the issue is an important one. For the reasons set forth below, the government's arguments are rejected and we hold that plaintiffs may prosecute these appeals on behalf of their children with or without the assistance of counsel.

## *BACKGROUND*

### A. *Supplemental Security Income ("SSI")*

 The purpose of the SSI program is to maintain recipients' income " 'at a level viewed by Congress as the minimum necessary' for subsistence." *Jacques v. United States R.R. Retirement Bd.,* 736 F.2d 34, 37–38 n. 2 (2d Cir.1984) (quoting *Whaley v. Schweiker,* 663 F.2d 871, 873 (9th Cir.1981)). To qualify for SSI benefits, a person "must meet stringent income and resources standards" and must also be aged, blind, or disabled. *Id.* at 38 n. 2; *see Gordon v. Shalala,* 55 F.3d 101, 101–02 (2d Cir.1995), *cert. denied,* 517 U.S. 1103, 116 S.Ct. 1317, 134 L.Ed.2d 470 (1996). SSI

provides recipients with cash benefits as well as access to Medicaid. *See* Linda C. Fentiman, *Health Care Access for Children With Disabilities,* 19 Pace L.Rev. 245, 247 (1999).

Children as well as adults may qualify for SSI benefits. As of March 1999, the average monthly payment for recipients under eighteen was $451 per month. *See* Social Security Administration, *Highlights of Supplemental Security Income Data, March 1999* (visited June 2, 1999) <http://www.ssa.gov/statistics/highssi.html>. In some cases, these payments permit low-income families "to buy necessary supportive products and services, such as state of the art wheelchairs, nutritional supplements, and other items not covered by Medicaid," as well as "child care services that permit [the parents] to work more hours, and thus, try to bring the family out of poverty." Fentiman, *supra,* at 247–48.

Applications for SSI benefits for disabled children are often made by their parents. *See generally* Robert L. Raper, *An Advocate's Guide to Childhood Disability Under the New Supplemental Security Income Standard,* 6 Ky. Children's Rts. J. 1 (1998) (describing the process of applying for benefits). Regulations provide procedures to assure that parents "are of good character and in good repute, possessed of the necessary qualifications to enable them to render [their children] valuable service, and otherwise competent to advise and assist [their children] in the presentation of their cases." 42 U.S.C. § 406(a)(1).[1] A parent, on behalf of the child, submits the initial application for benefits, with supporting documentation, to the Social Security Administration (the

---

1. The district courts have a comparable procedure to assure conflict-free representation pursuant to Federal Rule of Civil Procedure 17(c). To protect the interests of children, district courts may conduct hearings, *sua sponte* or upon application of the government, to inquire into potential conflicts. *See* Fed. R.Civ.P. 17(c) ("The court ... shall make such other order as it deems proper for the

protection of the infant...."). The government agreed during argument that Rule 17(c) provides broad enough authority to conduct such a hearing, and conceded that it knew of no conflict between the parents and children in the two cases before us. (Tr. at 17–18). Citations to "Tr." refer to the transcript of the oral argument held on May 28, 1999.

"SSA"). *See* 20 C.F.R. §§ 416.310 & 416.315(b). If the SSA determines that a minor child is qualified to receive benefits, cash benefits are paid to the parent or other qualified representative, termed a "representative payee." *Id.* § 416.621(b). *See generally id.* §§ 416.601–665. The representative payee is required to "[u]se the payments he or she receives only for the use and benefit of the beneficiary." *Id.* § 416.635(a). Where a child is entitled to past due benefits, a lump-sum retroactive benefit is paid. In such cases, the representative payee is required to establish a dedicated account for the child's benefit, *id.* §§ 416.546 & 416.640(e), and must maintain records and receipts of all deposits to and withdrawals from the dedicated account, *id.* § 416.640(e)(3). The payee can be held liable for the unauthorized use of these funds. *Id.* § 416.640(e)(4).

If the parent wishes to appeal an adverse determination of the initial application for benefits, the first step is filing a request for reconsideration. *Id.* §§ 416.1407 & 416.1409(a). On reconsideration, a parent has a right to request a hearing and may present additional evidence. *Id.* § 416.1413. If the claim for benefits is denied upon reconsideration, the parent may file a request for a hearing before an administrative law judge ("ALJ"). *Id.* § 416.1429. To contest an ALJ's decision, or the denial of the request for a hearing, a parent may request that the Appeals Council review the determination by filing a written request and supporting documentation. *Id.* §§ 416.1467–1468. Finally, a civil action may be filed in district court to obtain review of a final adverse determination of the SSA. 42 U.S.C. § 405(g); 20 C.F.R. § 416.1481.

In passing the legislation that provides SSI benefits for disabled children living in low-income households, Congress found that such children were "among the most disadvantaged of all Americans."

H.R.Rep. No. 92–231 (1971), *reprinted in* 1972 U.S.C.C.A.N. 4989, 5133–34; *see also* Raper, *supra,* at 2 (discussing this legislative history). SSI was intended to provide them with "special assistance in order to help them become self-supporting members of our society." *Id.* at 5134. The benefits provided by Congress, and the procedures established by statute and regulations to carry out these benefits, were thus intended to flow to those in need at the time of their need to enable them to overcome their disabilities and enter society.

## B. *The Facts*

### 1. *Maldonado*

On August 30, 1994, Nurys Maldonado ("Ms.Maldonado") applied for SSI benefits on behalf of· her six-year-old son, Rogelio Maldonado ("Rogelio"). (Maldonado Admin. R. at 17–20).[2] Ms. Maldonado alleged that Rogelio suffered from severe visual problems and has been diagnosed as legally blind. (Maldonado Aff. ¶ 2). Ms. Maldonado has four children, one of whom is mentally retarded and currently receives SSI benefits; her husband and Rogelio's father, also named Rogelio Maldonado ("Mr.Maldonado"), is disabled and has applied for Social Security benefits. (*Id.* ¶ 3). The family is supported by public assistance. (*Id.*).

On January 5, 1995, the application for Rogelio's SSI benefits was denied. (Maldonado Admin. R. at 24–26). Two months later, on March 7, 1995, Ms. Maldonado sought reconsideration of this decision, and upon reconsideration the application was again denied on July 21, 1995. (*Id.·* at 27–34.). On September 19, 1995, Ms. Maldonado submitted a request for an administrative hearing before an ALJ. (*Id.* at 35–36). By letter dated· October 13, 1995, the SSA acknowledged Ms. Maldonado's request for a hearing and advised her

---

**2.** Citations to "Maldonado Admin. R." refer to the administrative record filed by the government on May 19, 1999 pursuant to 42 U.S.C. § 405(g). The details surrounding the filing of this record are discussed in greater detail *infra,* note 4.

of the steps necessary to prepare for the hearing. (*Id.* at 37–38). This letter contained a section entitled "Your Right to Representation." (*Id.* at 37.). The letter stated that Rogelio could be represented "by a lawyer or other person" and that some lawyers may charge a fee, which must be approved by the SSA. In addition, attached to the letter, but not included in the administrative record on file with the Court, was a list of groups that provide legal assistance to individuals seeking SSI benefits. (*Id.*).

On May 22, 1996, Ms. Maldonado was notified that a hearing before an ALJ was scheduled for June 10, 1996. (Maldonado Admin. R. at 75–83). At the hearing, Mr. Maldonado [3] informed the ALJ that he had been unable to obtain an attorney. (Maldonado Supp. Admin. R. at 107–08).[4] The hearing began and concluded that same day. After the hearing, as the ALJ would subsequently state in his written opinion, "the case was held in abeyance pending implementation of the new statutory standard for evaluating childhood disability claims." (Maldonado Admin. R. at 10). That new standard became effective on August 22, 1996, when Congress amended the definition of childhood disability to tighten various requirements. *See* 42 U.S.C. § 1382c(a)(3)(C)(i); *Quinones v. Chater,* 117 F.3d 29, 33 n. 1 (2d Cir.1997).

Some eight months later, by letter dated April 14, 1997, the ALJ informed Mr. Maldonado of the change in law and gave him an opportunity to submit additional information or written comments, or to request a supplemental hearing. (Maldonado Admin. R. at 101–02). By letter dated April 22, 1997, Ms. Maldonado responded to the ALJ's letter and complained of the long delay in handling her son's case, noting

that they applied for benefits in August of 1994. She alleged that were it not for the SSA's mishandling of the case, it would have been resolved long before the new law took effect. (*Id.* at 103). There is no record of a supplemental hearing. On November 26, 1997, the ALJ issued a decision denying the application for benefits. (*Id.* at 7–16). On December 15, 1997, Ms. Maldonado submitted a form requesting that the Appeals Council review the ALJ's decision, and on July 24, 1998, the Appeals Council denied the request for review. (*Id.* at 3–6).

Throughout these administrative proceedings, Ms. Maldonado represented Rogelio. This was not, however, due to a lack of effort in trying to find an attorney. Soon after the SSA sent Ms. Maldonado the October 13, 1995 letter containing the list of groups that provide legal assistance to individuals seeking SSI benefits, she and her husband began to try to find a lawyer to represent Rogelio and "contacted every organization on the list in Manhattan and the Bronx." (Maldonado Aff. ¶¶ 5–6). None of these lawyers offered Ms. Maldonado so much as an initial appointment. (*Id.* ¶ 6). Ms. Maldonado then sought the services of private lawyers who advertised that they took disability cases. (*Id.*). Some replied that they did not take children's cases, while others said that they might take a child's case, but only if the family paid a retainer of $1,000. (*Id.*). The family, however, was not financially able to pay the requested retainer and thus Ms. Maldonado continued to represent her son. (*Id.*).

Upon exhausting the procedures available at the administrative level, Ms. Maldonado submitted a complaint on behalf of

---

**3.** Mr. Maldonado speaks English better than his wife (Maldonado Aff. ¶ 1), and appeared before the ALJ on behalf of his son.

**4.** In its Memorandum of Law Addressing the Need for Counsel to Represent the Minor Plaintiff dated May 17, 1999, the government indicated that the cassette tape recording of the administrative hearing could not be locat-

ed. (*Id.* at 2). Subsequently, the tape was found and, on June 16, 1999, the government filed a supplemental administrative record to include the transcript of the hearing. All references to this document are noted with the reference: "Maldonado Supp. Admin. R."

Rogelio and an application to proceed *in forma pauperis* to this Court's *Pro Se* Office on September 23, 1998. Her application to proceed *in forma pauperis* was granted on December 18, 1998 and the complaint was formally filed with the Clerk of the Court on December 22, 1998. On January 6, 1999, Ms. Maldonado completed a request to have the U.S. Marshals serve the complaint upon the defendant. The U.S. Attorney's Office received the complaint on February 5, 1999.

By letter dated February 19, 1999, the U.S. Attorney's office advised the Court that Ms. Maldonado filed this action on behalf of Rogelio and that the Second Circuit has held that a non-attorney parent cannot appear on behalf of an infant. On March 5, 1999, this Court entered an Order holding that pursuant to *Wenger v. Canastota Central School District*, 146 F.3d 123 (2d Cir.1998) (per curiam), *cert. denied*, — U.S. ——, 119 S.Ct. 1267, 143 L.Ed.2d 363 (1999), this case would be dismissed without prejudice if, by April 8, 1999, plaintiff was either unable to retain counsel or establish that there were sufficient merits to justify a listing of the case for pro bono representation. By letter of that same date, Bronx Legal Services requested permission to file a limited notice of appearance for purposes of challenging the arguments made by the U.S. Attorney's Office in its February 19 letter. Shortly thereafter, the Center for Disability Advocacy Rights, Inc. filed a similar limited notice of appearance. On March 11, 1999, the Court vacated the March 5 Order and approved a briefing schedule for the government's motion to dismiss.

### 2. *Olavarria*

On May 3, 1995, Claudia Olavarria ("Ms.Olavarria") applied for SSI benefits on behalf of her son, Shaun Olavarria ("Shaun"). (Olavarria Admin. R. at 21–23).[5] Ms. Olavarria alleged that Shaun suffers from severe attention deficit hyperactivity disorder ("ADHD"). (*See* Olavarria Aff. ¶ 1). Ms. Olavarria resides with her husband and four of her seven children. (*Id.* ¶ 2). The eldest child at home is twenty-five and attends college; the three youngest are all in school. (*Id.*). The husband is disabled and receives Workers' Compensation benefits. (Olavarria Supp. Admin. R. at 159). In addition to food stamps and Medicaid, the family receives a small bi-weekly public assistance grant. (Olavarria Aff. ¶ 3).

On June 27, 1995, the application for Shaun's SSI benefits was denied. (Olavarria Admin R. at 27–29). Ms. Olavarria filed a request for reconsideration on July 13, 1995. (*Id.* at 30). Upon reconsideration, the application for benefits was denied on October 20, 1995. (*Id.* at 35–37). On December 28, 1995, Ms. Olavarria filed a request for a hearing before an ALJ. (*Id.* at 38). The SSA sent a letter dated January 23, 1996 to Ms. Olavarria acknowledging receipt of her request for a hearing. (*Id.* at 40–41). As in *Maldonado*, the letter described how to prepare for the hearing and included the section entitled "Your Right to Representation." (*Id.*). Again, attached to the letter, but not included in the administrative record on file with the Court, was a list of groups that provide legal assistance to individuals seeking SSI benefits.

ALJ Sean P. Walsh notified Ms. Olavarria that a hearing was scheduled for July 3, 1996. (Olavarria Admin R. at 130). In an attempt to obtain counsel for the hearing, Ms. Olavarria contacted two private law firms both of which refused to take her case unless she put down money in advance, which she could not afford to do.

---

5. Citations to "Olavarria Admin. R." refer to the administrative record filed by the government on June 11, 1999 pursuant to 42 U.S.C. § 405(g). The government also filed a supplemental administrative record on July 2, 1999 consisting of a transcript of the July 3, 1996 administrative hearing. Citations to "Olavarria Supp. Admin. R." refer to this transcript. As discussed below, the administrative record in *Olavarria* remains incomplete as there is no transcript for the July 27, 1997 supplemental hearing.

(Olavarria Aff. ¶ 4). A supplemental hearing was held before Judge Walsh on July 22, 1997. (Olavarria Admin. R. at 152). Ms. Olavarria and her son appeared at both hearings without counsel. (Olavarria Aff. ¶ 4). On August 29, 1997, the ALJ issued a decision denying the application for benefits. (Olavarria Admin. R. at 7–10). That same day, Ms. Olavarria filed a request for a review of the ALJ's decision. (*Id.* at 5). The Appeals Council denied her request for review by letter dated August 11, 1998.

Ms. Olavarria again attempted to obtain representation. Bronx Legal Services instructed her to file the case in district court on her own first and to return once the government filed an answer. (Olavarria Aff. ¶ 7). On October 7, 1999, plaintiff submitted a complaint to this Court's *Pro Se* Office, and the complaint was formally filed with the Clerk of the Court on December 22, 1999. Ms. Olavarria also completed an application to proceed *in forma pauperis*. The Court granted the application.

After receiving a letter from the government dated February 24, 1999, which explained the government's position that Ms. Olavarria may not represent her son in these proceedings without counsel, the Court scheduled a conference for March 19, 1999. Ms. Olavarria attempted to obtain counsel to attend the conference. (Olavarria Aff. ¶¶ 8–9). Both Bronx Legal Services and the Legal Aid Society informed her that no lawyers were available to accompany her to the conference. (*Id.* ¶ 9). She also contacted approximately five or six other legal aid offices, all of which informed plaintiff that they did not handle children's SSI cases. (*Id.*). Ultimately, the Court's *Pro Se* Office arranged for lawyers with Legal Services for the Elderly and Bronx Legal Services to attend the conference. At the conference, these organizations agreed to represent plaintiff for the limited purpose of determining whether she could continue to represent her son without an attorney.

The government has been unable to provide a complete administrative record in *Olavarria*. Specifically, the audio tape on which the supplemental hearing is recorded is inaudible and cannot be transcribed. In a letter dated June 7, 1999, the government informed the Court that it had proposed to Ms. Olavarria and her counsel that the case be remanded for further administrative proceedings, including a new hearing. The Court will address the issue of remand after the issue of representation is resolved.

We decided to hear argument in the two cases together and we did so on May 28, 1999.

## DISCUSSION

■ The issue presented is whether non-attorney parents may represent their minor children without the assistance of counsel in appeals to the district court from the administrative denial of social security benefits. The government argues that non-attorney parents may not represent their minor children in proceedings before the Court, and contends that the complaint must be dismissed if the Court does not appoint counsel.

At oral argument and in its brief, the government suggested that the dismissal could be without prejudice, to mitigate the harsh effect. (Tr. at 11–12). But the harsh effect of dismissal, even without prejudice, may not be subject to mitigation. To obtain judicial review of a denial of benefits, a claimant must file an action in district court within sixty days. *See* 42 U.S.C. § 405(g). At oral argument, the government carefully avoided conceding that it would not raise a statute of limitations defense upon re-filing (Tr. at 12–13), and a dismissal without prejudice does not automatically toll the running of this statute of limitations, *see Johnson v. Nyack Hosp.*, 86 F.3d 8, 11 (2d Cir.1996). Infancy may give rise to an equitable tolling of the statute of limitations until the claimants attain the age of majority (Tr. at 12–

13), but even so, such an enforced wait would frustrate the congressional intent to provide SSI benefits to children while they are children.

Accordingly, we reject the government's position because: (1) the Second Circuit's general rule prohibiting non-attorney parents from representing their children in litigation is inapplicable in the context of appeals from denials by the SSA of SSI benefits, and (2) there are important legal and policy considerations for authorizing parents to represent their children in these SSI cases.

## A. *The Second Circuit Caselaw*

The Second Circuit first ruled that parents may not represent their children without the assistance of counsel in *Cheung v. Youth Orchestra Foundation of Buffalo, Inc.,* 906 F.2d 59 (2d Cir.1990). In a case involving a complaint by a parent that reverse alphabetical placement of children in a school orchestra constituted racial discrimination, the court held that the parent could not proceed without retaining counsel and that the complaint would have to be dismissed without prejudice. *Id.* at 62.

In *Wenger v. Canastota Central School District,* 146 F.3d 123 (2d Cir.1998) (per curiam), *cert. denied,* —— U.S. ——, 119 S.Ct. 1267, 143 L.Ed.2d 363 (1999), the Second Circuit ruled that a court must *sua sponte* apply the *Cheung* rule where a parent sued under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.,* the Rehabilitation Act of 1973 ("Rehabilitative Act"), 29 U.S.C. § 794, and the Due Process Clause of the Fourteenth Amendment, for injunc-

tive relief, compensatory damages, as well as punitive damages. *Wenger,* 146 F.3d at 125. The court ruled that district courts, in deciding whether to appoint counsel, should focus on the minor's need for an attorney and consider the fact that the case will not go forward at all without the appointment of counsel. *Id.*

In *Iannaccone v. Law,* 142 F.3d 553 (2d Cir.1998), a case involving a suit by an executor and sole beneficiary to recover his deceased father's unpaid social security benefits, the Second Circuit allowed the case to proceed insofar as the recovery was personal to the plaintiff, but required counsel to be retained where recovery was sought for the benefit of the father's estate. *Id.* at 558–60.

The Second Circuit relied in these cases on various considerations. First, although a litigant in federal court generally has the right to act as her or his own counsel, minors do not have that same right "for courts to respect" because minors lack the capacity to make legal decisions. *Cheung,* 906 F.2d at 61. Second, minors' rights will not be "fully protected" without trained legal assistance. *Cheung,* 906 F.2d at 61; *see Wenger,* 146 F.3d at 125. Third, permitting "guardians to bring *pro se* litigation ... invites abuse." *Cheung,* 906 F.2d at 61.

These considerations have not been applied to SSI cases involving minor children,[6] with one exception. *See Rosario v. Apfel,* No. 96 Civ. 1227, 1998 WL 685173 (S.D.N.Y. Sept. 30, 1998). To the contrary, the Second Circuit as well as district courts within this circuit have routinely permitted parents in SSI cases to represent minor claimants without an attorney.[7]

---

**6.** Cases decided by other Courts of Appeals of similar effect also did not involve SSI benefits. *See, e.g., Collinsgru v. Palmyra Bd. of Educ.,* 161 F.3d 225 (3d Cir.1998) (IDEA); *Devine v. Indian River County Sch. Bd.,* 121 F.3d 576 (11th Cir.1997) (IDEA), *cert. denied,* —— U.S. ——, 118 S.Ct. 1040, 140 L.Ed.2d 106 (1998); *Johns v. County of San Diego,* 114 F.3d 874 (9th Cir.1997) (civil

rights); *Meeker v. Kercher,* 782 F.2d 153 (10th Cir.1986) (civil rights).

**7.** *See, e.g., Gonzalez v. Callahan,* 133 F.3d 907, 1997 WL 829254 (2d Cir. Oct. 31, 1997) (unpub.mem.); *Scullark v. Apfel,* No. 97 Civ. 7138, 1998 WL 472059 (S.D.N.Y. Aug. 6, 1998); *Tracy v. Apfel,* No. 97 Civ. 4357, 1998 WL 765137 (E.D.N.Y. Apr. 22, 1998); *Caraballo v. Callahan,* No. 96 Civ. 2328, 1998 WL

Even after *Wenger*, a court in this district permitted a mother to represent her minor son *pro se* in a social security appeal. *See Scullark v. Apfel*, No. 97 Civ. 7138, 1998 WL 472059 (S.D.N.Y. Aug. 6, 1998). We disagree with the decision in *Rosario* and conclude that the rule articulated by the Second Circuit in *Cheung, Wenger,* and *Iannaccone* does not apply to SSI appeals brought on behalf of minor children by their parents.

## B. Application

### 1. The Second Circuit's General Rule Is Inapplicable

### a. The Concerns Behind the General Rule Do Not Apply

The reasons for the general rule articulated by the Second Circuit do not apply in the context of SSI appeals. First, in *Cheung,* the Second Circuit ruled that minors lacked capacity to choose to proceed *pro se*, and thus concluded that "the *sole* policy at stake concern[ed] the exclusion of non-licensed persons [from] appear[ing] as attorneys on behalf of others." *Cheung,* 906 F.2d at 61 (emphasis added). In SSI cases, however, the alternative consequence suggested by the government—that the complaint be dismissed—is simply not acceptable, for it would destroy the right given by the statute to minors. In social security cases, "[a]ny individual" has the right to appeal a final decision of the SSA "after a hearing to which he [or she] was a party" by commencing a civil action within sixty days, 42 U.S.C. § 405(g), and a minor child living in a low-income family usually cannot exercise that right except through a parent or guardian. If the

Court were to accept the government's view, the minor's right would be destroyed.

Second, the minor's rights can be "fully protected" in SSI cases even without counsel. In reviewing an administrative denial of benefits, a district court must review the record to determine if "all of the relevant facts [were] sufficiently developed and considered." *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir.1982) (quoting *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir.1980)). Indeed, where a claimant proceeded *pro se* at the administrative level, the reviewing court has "a duty to make a 'searching investigation' of the record." *Hankerson,* 636 F.2d at 895 (quoting *Gold v. Secretary of Health, Educ. & Welfare*, 463 F.2d 38, 43 (2d Cir.1972)). While the assistance of counsel certainly would be helpful, it is not essential.

Third, social security appeals are not subject to the same abuse about which the Second Circuit expressed concern in *Cheung.* As discussed more fully below, the proceeding involves only the appeal from the denial of monetary benefits and the review of an administrative record. SSI appeals therefore do not involve the subjective criteria and range of fact-finding that are characteristic of the IDEA and discrimination cases that led to the rule discussed in *Wenger* and *Cheung.* Furthermore, the statute requires payment to the parent or guardian, the very party who seeks to sue.

### b. The Cases Are Distinguishable on Their Facts

None of the Second Circuit cases relied on by the government involved parents

229264 (E.D.N.Y. Apr. 1, 1998); *Evans v. Apfel*, No. 96 Civ. 7741, 1998 WL 91127 (S.D.N.Y. Mar. 2, 1998); *Diaz v. Apfel*, 994 F.Supp. 541 (S.D.N.Y.1998); *Dawson v. Apfel*, No. 96 Civ. 6023, 1997 WL 716924 (S.D.N.Y. Nov. 17, 1997); *Lambert v. Chater*, No. 95 Civ. 2315, 1996 WL 744888 (S.D.N.Y. Dec. 31, 1996); *Montero v. Chater*, No. 96 Civ. 1205, 1996 WL 1088904 (E.D.N.Y. Nov. 6, 1996); *Diaz v. Chater*, No. 94 Civ. 5149, 1996 WL

612492 (E.D.N.Y. Oct. 16, 1996); *Marquez v. Shalala*, 898 F.Supp. 238 (S.D.N.Y.1995); *McKenzie v. Chater*, No. 95 Civ. 1297, 1996 WL 599721 (E.D.N.Y. Sept. 25, 1996); *Stewart v. Chater*, No. 95 Civ. 2289, 1996 WL 534832 (E.D.N.Y. Sept. 19, 1996); *Williams v. Shalala*, No. 94 Civ. 6212, 1995 WL 598990 (S.D.N.Y. Oct. 10, 1995); *Anderson v. Shalala*, No. 93 Civ. 4753, 1994 WL 722810 (E.D.N.Y. June 20, 1994).

representing children in social security appeals. In *Cheung*, for example, a father filed a *pro se* civil rights complaint on behalf of his sixteen-year-old daughter, alleging racial discrimination by a foundation that operated a youth orchestra. In the first orchestra season, the musicians were seated alphabetically. In the second season, the musicians were arranged in reverse alphabetical order, which resulted in the daughter being seated further away from the audience. The father alleged that the new seating arrangement was discriminatory because it was adopted to reduce the number of Asian Americans sitting near the audience. The case therefore involved a father's unhappiness with the seating arrangement of a children's orchestra, not important SSI benefits to a child living in poverty.[8] Further, Cheung asserted claims that would have entailed plenary proceedings, not merely the review of an administrative record as is the case here.

In *Wenger*, a father filed a *pro se* complaint on behalf of his nineteen-year-old son [9] against the school district and others asserting various claims under: (1) the IDEA; (2) the Rehabilitation Act; and (3) the Due Process Clause. The father alleged that the defendants failed to provide appropriate special education services and that they discriminated against the son because of his disability. The father also asserted his own claims alleging that the defendants violated his rights as a parent under the IDEA.

There are important differences between *Wenger* and the cases at bar. First, as in *Cheung*, the multiple claims in *Wenger* would have entailed proceedings that are more involved than the review of an administrative record. Wenger asserted, for example, a plenary due process action, and a complicated IDEA action.[10] Second, IDEA claims and SSI claims are sufficiently dissimilar to justify a different result. SSI benefits, for example, are means-tested, that is, they are intended for low-income people, whereas benefits under the IDEA are not so restricted. (*See* Tr. at 27–28). Further, SSI provides claimants with cash benefits on which to live and access to medical treatment through Medicaid, whereas the IDEA addresses, not whether a child has the right to an education, but rather the type of education to which a child is entitled. Moreover, as noted, IDEA proceedings in district court are more involved than SSI appeals, imposing more of a burden on litigants. (*See supra* n. 10; *infra* part B.2.b). Third, just as a trustee would have the right to sue on behalf of a beneficiary for money owed to the beneficiary, so too should a parent as

**8.** The Second Circuit acknowledged that the facts in *Cheung* were weak. *See Cheung*, 906 F.2d at 61 (suggesting that "the present case may demonstrate" that allowing guardians to bring *pro se* litigation invites abuse); *id.* at 62 ("[W]e confess our own view that the facts of this case hardly cry out for the appointment of counsel.").

**9.** The son sustained a traumatic brain injury when he was fifteen. *Wenger v. Canastota Cent. Sch. Dist.*, 961 F.Supp. 416, 418 n. 1 (N.D.N.Y.1997), *aff'd in part and vacated in part*, 146 F.3d 123 (2d Cir.1998) (per curiam), *cert. denied*, —— U.S. ——, 119 S.Ct. 1267, 143 L.Ed.2d 363 (1999).

**10.** The IDEA provides for review in district court of a denial of benefits by a state or local educational agency. *See* 20 U.S.C. § 1415(b)(2) & (e)(2). The district court is

charged with the difficult task of ascertaining if "the individualized educational program developed through the Act's procedures [was] reasonably calculated to enable the child to receive educational benefits." *Board of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206–07, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *see Muller v. Committee on Special Educ. of East Islip Union Free Sch. Dist.*, 145 F.3d 95, 101 (2d Cir.1998) (quoting *Rowley*, 458 U.S. at 206–07, 102 S.Ct. 3034). The Supreme Court has also ruled that this standard of review, while not as broad as de novo review, is not limited "to review for state compliance with the [IDEA's] procedural requirements" with "no power to review the substance of the state program." *Rowley*, 458 U.S. at 205, 102 S.Ct. 3034. The proceedings in district courts, therefore, are considerably more involved than the review of an administrative record in SSI appeals.

trustee of child SSI benefits have standing to sue on behalf of a minor child.[11] Finally, the son in *Wenger* was over eighteen, and not a minor, when the suit was filed.

In *Iannaccone,* the *pro se* plaintiff appeared on behalf of his father's estate to appeal a denial of social security benefits to which plaintiff claimed his father was entitled during his lifetime. Although *Iannaccone* includes broad language that a non-attorney may not appeal the denial of another person's SSI benefits *pro se,*[12] the instant case is distinguishable. *Iannaccone* did not involve benefits claimed for a living child in immediate need of those benefits. Instead, the benefits in *Iannaccone* were claimed to belong to the estate of a deceased parent with no such immediate need. Further, there is no indication in *Iannaccone* that counsel was unavailable, as is the case here.

### 2. *Policy Considerations*

We hold that parents should be permitted to represent their children without an attorney in SSI cases for at least the following four policy reasons: (1) the parents represented their children throughout the administrative proceedings and they should be permitted to do so on appeal; (2) an appeal from the denial of SSI benefits is a common and fairly simple proceeding that is often prosecuted without the assistance of counsel; (3) plaintiffs in these cases are often unable to obtain counsel; and (4) child SSI benefits are intended to aid disabled children while they are children and therefore those rights must be vindicated in a timely manner.

### a. *Parents Have Represented Their Children*

Here, Ms. Olavarria and Ms. Maldonado represented their children throughout the administrative proceedings. They filed the application for benefits; they compiled the evidence required for the administrative proceeding; they filed a request for reconsideration; they appeared at the hearings before the ALJs; and they appealed the ALJs' decisions to the Appeals Council. There is no reasoned basis to conclude that upon filing their complaints in federal court, Ms. Olavarria and Ms.

---

**11.** In *Collinsgru v. Palmyra Board of Education,* 161 F.3d 225 (3d Cir.1998), an IDEA case, the Third Circuit, citing *Wenger,* rejected the parents' contention that they were the real parties in interest and therefore had standing to sue on behalf of their children. The court held that the IDEA did not create substantive rights in the parents of disabled children, and that general statutory language about parents' interests and their right to recover attorneys' fees were not sufficient to give them standing. In contrast, the SSI statutory scheme entails rights and responsibilities of the parent. Unlike the benefit of special educational services in an IDEA case, for example, SSI benefits for children are paid in cash *to a parent* for the benefit of the child. Further, where the parent is on public assistance, which is often the case, the *parent's* welfare funds are reduced upon an award of child SSI benefits. Moreover, with regard to retroactive, lump-sum payments, parents must place the payments in specific accounts, utilize those funds in a specific manner, and maintain records. Parents also are liable for the misuse of benefits. (*See supra* Background part A).

In *Pridgen v. Andresen,* 113 F.3d 391 (2d Cir.1997), an executrix was not permitted to appear *pro se* on behalf of her husband's estate to the extent that the estate was subject to conflicting claims. SSI claims are distinguishable. The interests of the parent and child in SSI cases are aligned. Again, the regulations require that benefits paid to parents be utilized solely for the benefit of the child, and that certain funds be placed in restricted accounts, assuring that the child will be the sole beneficiary.

**12.** The Second Circuit noted that "[t]he plain language of [42 U.S.C. § 406(a)(1)] indicates that Congress only authorized the Commissioner to recognize non-attorneys representing claimants in proceedings held before the Commissioner." *Iannaccone,* 142 F.3d at 559. The Court further noted that 42 U.S.C. § 405(g), permitting "[a]ny individual" to obtain review in district court, "does not address the specific procedural issue of whether a claimant may proceed *pro se.*" *Id.* We note that the statute does not *prohibit* non-attorney guardians from representing their children in district court. In any event, as we point out in the text, SSI cases are distinguishable from the estate issues addressed in *Iannaccone.*

Maldonado suddenly became incapable of representing their children. Indeed, both mothers have already succeeded in filing complaints and obtaining awards of *in forma pauperis* status.

### b. *The Nature of the Proceeding*

The nature of the proceeding here is different from that of the actions brought in *Wenger* and *Cheung*. Here, the proceeding is an appeal from the administrative denial of benefits. The Court reviews the administrative record, a task for which the courts are well-suited and one that generally requires little action on the part of the plaintiff. *See Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir.1982). Because less is required of a plaintiff in an administrative appeal, parents are more capable of representing their children in these cases than in a plenary action. As Ms. Olavarria's counsel notes: "There are no depositions to conduct or defend, affidavits to prepare, or trials to conduct." (Biddle Letter to the Court dated June 4, 1999, at 5). In contrast, *Wenger* and *Cheung* involved proceedings that would have required significantly more participation from the plaintiffs.

Moreover, the courts are intimately familiar with social security cases in part because of their volume. Indeed, of the 18,643 disability cases filed in district courts in 1997, over twenty-five percent were SSI cases. *See* Social Security Bulletin, Annual Statistical Supplement tbl. 2.F10 (1998). Although it would certainly be preferable for a plaintiff in a social security case to have the assistance of counsel, it is not necessary.

### c. *The Difficulty of Appointing Counsel*

If the family cannot find representation on its own, the issue becomes whether the district courts should appoint counsel. The government argues that the Court should consider whether to appoint counsel in much the same manner as in any other case where a *pro se* litigant requests counsel, considering the additional factor that if counsel is not appointed, the case will be dismissed. Plaintiffs' counsel take the position that the district courts should be required to appoint counsel, but that the case may proceed if the Court declines to appoint counsel.

As a policy matter, it is not reasonable or practical for the Court to appoint counsel in all of these cases. First, although the parties did not provide statistics as to the number of social security appeals filed by guardians on behalf of minors, it is clear from the Court's own experience and the Court's research that a great number of these cases are filed.

Second, it is difficult for claimants to find counsel willing to take these cases. Unfortunately, these social security appeals often "are not very attractive cases" to non-volunteer private attorneys. (Tr. at 36). As plaintiffs' counsel explained: "In general, attorneys in private practice, including members of the Social Security bar, will not accept children's SSI cases." [13] (*See* Baker Aff. ¶ 4). Further, legal services organizations cannot be expected to accept all of the children's SSI cases. Due to lack of funding, the loss of staff positions, and other responsibilities, most organizations are operating at or near capac-

---

**13.** Plaintiffs' counsel represent that at least three reasons exist for the aversion of attorneys in private practice to these case. First, the attorney's potential contingent fee is small both because SSI benefit levels are significantly lower than Social Security Disability ("SSD") benefit levels, and because if the SSI applicant also receives welfare benefits, the state and local welfare authorities are often entitled to retroactive payments before the attorney is paid. (Baker Aff. ¶ 4). Second, unlike in SSD cases, the attorney in an SSI case cannot be assured payment because the SSA does not automatically withhold a portion of a successful claimant's retroactive benefits for attorneys' fees. (*Id.*). Third, children's SSI cases require specialized knowledge that is not required for adult cases. (*Id.*).

ity. (*See id.* ¶¶ 5–7). *See also* Bruce A. Green, Foreword, *Rationing Lawyers: Ethical and Professional Issues in the Delivery of Legal Services to Low–Income Clients,* 67 Fordham L.Rev. 1713, 1713 (1999) ("It is ... commonly understood that the present level of government and private funding for legal services for low-income persons is woefully inadequate to meet the pressing legal need.").

Third, plaintiffs' counsel suggest that the Court "rely on a volunteer system" (Tr. at 31), but it is difficult for courts to appoint counsel. While a court can order that counsel be appointed, such an order does not mean that counsel will necessarily be found. When a court orders that counsel be appointed in a civil case in this district, the case is added to a list of other cases in which counsel has been requested. The *Pro Se* Office circulates this list and attempts to locate willing attorneys. These efforts are not always successful, and the case is usually delayed. Of course, the Court would welcome greater pro bono participation by the private bar. Experience teaches us, however, that many of these cases will languish waiting for the assignment of counsel.

There is a further difficulty with regard to finding counsel that is a particular feature of SSI cases. Customarily, the record of the proceedings before the SSA is filed in the district court at the time of, and along with, the government's answer. *See* 42 U.S.C. § 405(g). In both *Olavarria* and *Maldonado,* however, the government initially moved to dismiss in lieu of answer, contending that the cases should be dismissed because parents cannot represent their children. Thus, when the government first made its motion, the Court had not yet received a copy of the administrative record in either case.

Without a record, the merits cannot be evaluated. Private counsel cannot be expected to become interested in a case of unknown merit. And under *Hodge v. Police Officers,* 802 F.2d 58 (2d Cir.1986), there is not even a proper basis for the Court to appoint pro bono counsel because a court cannot determine whether the case "seems likely to be of substance." *Id.* at 61.

At oral argument, the government advised us that it is changing its policy and, in future cases, intends to file the administrative record before filing motions. (Tr. at 7, 11–13, 18–20). We are not able to predict if this change is permanent, nor if future circumstances will ease the present difficulties in finding counsel for SSI cases. At present, in *Olavarria* and *Maldonado,* we find that plaintiffs were not able to retain counsel despite diligent effort, and it is unclear at this point whether they will be able to obtain pro bono counsel to represent them on the merits.

#### d. *The Nature of the Claimed Benefit*

Finally, children's SSI benefits are distinguishable from the rights and benefits claimed in *Cheung, Wenger,* and *Iannaccone.* The purpose of providing SSI benefits to minor children is to provide benefits to children *while they are children,* thus enabling them, as "among the most disadvantaged of all Americans," to enter society as "self-supporting members." H.R.Rep. No. 92–231 (1971), *reprinted in* 1972 U.S.C.C.A.N. 4989, 5133–34. The procedure for judicial review of adverse determinations by the SSA must be interpreted consistently with the congressional intent. Here, as we have described, the parents have been unable to find representation for their children despite diligent effort, and it is unclear whether the Court will have more success than the parents. If the rule of *Cheung, Wenger,* and *Iannaccone* were to be applied to these SSI cases, long delays would be inevitable and the congressional purpose with regard to SSI benefits would be frustrated. Accordingly, *Cheung, Wenger,* and *Iannaccone* are distinguishable, for they are at odds with the purpose of providing SSI benefits during infancy, and they are inconsistent with the purpose of providing prompt judi-

cial review of adverse agency determinations.

In closing, we should remember that Ms. Maldonado applied for benefits on behalf of Rogelio when he was six.years old. Today, he is eleven. It has taken him almost half his life to obtain review in this Court of the decision denying him benefits, and the process is not yet complete. The situation confronting Ms. Olavarria and Shaun is no better. They applied for benefits when Shaun was twelve. Today, he is nearly seventeen. For children seeking to obtain SSI benefits while they are still children, the extent of this delay, standing on its own, is tantamount to a denial of benefits. The district courts in this circuit have been reviewing SSI appeals brought by *pro se* parents on behalf of their children for many years. The interests of justice require that the courts be permitted to continue doing so.

## CONCLUSION

For the reasons stated above, the government's arguments are rejected. While plaintiffs may continue their efforts to seek counsel to represent them on the merits, if they fail to obtain counsel the complaints will not be dismissed and instead the parents will be permitted to prosecute the appeals on behalf of their children without the assistance of counsel.

SO ORDERED.