142 F.3d 553
 William G. IANNACCONE, Estate of Peter Iannaccone, Deceased,
by William G. Iannaccone, Administrator and
Claimant, Plaintiff-Counter-Defendant-Appellant,
v.
Marie LAW, Former "Custodian" of SSA Funds payable for Peter
Iannaccone, Defendant-Counter-Claimant-Appellee,
John J. Callahan, Acting Commissioner of Social Security,
Defendant-Appellee.
 Docket No. 97-6045.
 United States Court of Appeals,
Second Circuit.
 Submitted Oct. 30, 1997.
Decided April 27, 1998.
 
 William G. Iannaccone, Cheektowaga, NY, pro se.
 Sandra M. Grossfeld, Assistant Regional Counsel, New York City (Barbara L. Spivak, Chief Counsel, Region II, Arthur J. Fried, General Counsel, Office of the General Counsel, Social Security Administration, New York City; Patrick H. Nemoyer, United States Attorney, Western District of New York, Buffalo, NY), for Defendant-Appellee Commissioner of Social Security.
 John Richard Streb, Kenmore, NY, for Defendant-Counter Claimant-Appellee Marie Law.
 Before: CARDAMONE, WALKER, and JACOBS, Circuit Judges
 CARDAMONE, Circuit Judge:
 
 
 1
 This appeal is from a January 23, 1997 order of the United States District Court for the Western District of New York (Skretny, J.), dismissing without prejudice an action brought by plaintiff William G. Iannaccone, appearing pro se, as administrator of his father's, Peter Iannaccone's, estate. The action consists of two claims. The first claim seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) that denied social security benefits to which plaintiff claims his father was entitled during his lifetime. The second claim seeks damages from Marie Law, who was a custodian of the deceased, for her alleged conversion of the decedent's social security checks.
 
 
 2
 The district court dismissed both claims because the plaintiff administrator, a non-lawyer, purported to provide legal representation for the decedent's estate. The issue before us on this appeal is whether plaintiff may appear pro se with respect to both claims. Because the answer regarding each claim is different, it will be helpful to the explanation to examine the subject of pro se representation in civil actions.
 
 BACKGROUND
 A. Family History
 
 3
 We turn first to the facts. William G. Iannaccone, the pro se plaintiff and appellant in this case, is the sole surviving child of Peter and Mamie Iannaccone. The father, Peter, was born on March 2, 1911 and the mother, Mamie, was born on March 30, 1918. They were married in 1938. The father served in the armed forces of the United States during World War II and returned to civilian life in 1944 with a service-connected mental disorder disability. The couple separated that year, but never divorced. As a result of his disability, Peter Iannaccone was involuntarily confined to a Veterans Administration psychiatric hospital in Canandaigua, New York.
 
 
 4
 In October 1976, Mamie filed an application for disability insurance benefits, which was granted. Peter filed an application for retirement insurance benefits on his own social security account in November 1976, at age 65. His application was denied based on a determination that he did not have sufficient covered quarters of earnings under the law to meet the insured status requirement necessary to be entitled to retirement benefits.
 
 B. Administrative Proceedings
 
 5
 Mamie Iannaccone died on October 15, 1978. After her death, an application was filed in February 1979 for the lump sum death benefit on her social security account. Social security records show that a $255 lump sum death benefit was paid to her husband in March 1979.
 
 
 6
 After Peter's death on April 20, 1992, William Iannaccone, the 46-year-old plaintiff, was granted letters of administration upon his father's estate on November 5, 1992.
 
 
 7
 On April 23, 1992 plaintiff, as administrator of his father's estate, filed a claim with the Commissioner for amounts due his father as widower's insurance benefits on Mamie's account. The Commissioner approved payment of benefits to plaintiff on August 16, 1992, but only with respect to benefits owed for the six months immediately preceding the April 1992 application. Plaintiff requested reconsideration of the matter, asserting that his father's entitlement should be retroactive to 1976, when he attained age 65 and became eligible to receive those benefits. The administrative law judge (ALJ) conducted a hearing, considered the case de novo and, on August 18, 1994, deemed decedent to have filed an application for widower's insurance benefits on January 25, 1984. Accordingly, the ALJ directed the agency to redetermine the past-due benefits to which he was entitled. The decision of the ALJ became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on May 9, 1995. Plaintiff then sought review of the Commissioner's order in the district court.
 
 C. Judicial Proceedings
 
 8
 Peter Iannaccone received a 100 percent lifetime service-connected disability pension from the Veterans Administration beginning in 1944. In 1960 a New York court declared him legally incompetent. Although no committee was appointed for him at that time, his wife apparently oversaw the management of his property and income until her death in 1978. Mamie Iannaccone's sister, Marie Law, was named the executrix of Mamie's estate. Plaintiff alleges that Marie Law thereafter exercised control over plaintiff's father's property and income. In 1983 and 1984 plaintiff claimed Mamie Law misused and embezzled Peter's funds, and he therefore petitioned the court for appointment of a committee for his father. In June 1984 the court appointed a committee of the person and property of Peter Iannaccone.
 
 
 9
 In July 1995 plaintiff filed a complaint in the district court seeking damages from Marie Law, decedent's sister-in-law, for alleged conversion of social security benefits payments made to decedent. In that same complaint, plaintiff also sought review of the Commissioner's order, as discussed above.
 
 
 10
 By order dated November 14, 1996 the district court ruled that pursuant to N.Y. Jud. Law § 478 (McKinney's 1983), a natural person cannot appear for a person other than himself in a court of record without having been admitted to the practice of law. The district court judge stayed the action and sua sponte ordered plaintiff to obtain counsel to represent the estate in the action before January 15, 1997. The order also provided that, should plaintiff fail to obtain counsel, his complaint would be dismissed without prejudice, so that plaintiff could refile the action again whenever an attorney was prepared to present the estate's case. When plaintiff failed to obtain counsel, the district court, by order dated January 23, 1997, dismissed the case without prejudice. A judgment was entered accordingly on January 24, 1997. This appeal followed.
 
 DISCUSSION
 
 11
 * A. Right of Self-Representation Generally
 
 
 12
 Before turning to the merits of whether plaintiff is entitled to appear pro se in this civil proceeding, we think it helpful to discuss the general right of self-representation. The right to proceed pro se in civil actions in federal courts is guaranteed by 28 U.S.C. § 1654, which provides: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." Section 1654's guarantee derives directly from the Judiciary Act of 1789. First introduced in the Senate on June 12, 1789 as part of Senate Bill [S-1], the right to self-representation appeared in section 31 of the Bill. But when the Bill became law, on September 24, 1789, the right was moved to section 35, which reads as follows: "That in all the Courts of the United States the Parties may plead and manage their own causes personally or by the assistance of such Counsel or Attorneys at law as by the rules of the said Courts respectively shall be permitted to manage and conduct causes therein." V Documentary History of the First Federal Congress of the United States of America 1789-1791 1150, 1165, 1193 (1986). As can be seen, the right to self-representation has remained constant for over 200 years.
 
 
 13
 The framers of our Constitution thought self-representation in civil suits was a basic right that belongs to a free people. Although the Supreme Court alluded to civil pro se representation in Faretta v. California, 422 U.S. 806, 812-13, 95 S.Ct. 2525, 2529-30, 45 L.Ed.2d 562 (1975), the Court there focused its discussion on the right to represent oneself as a defendant in a criminal case, id. at 813, 95 S.Ct. at 2530 et seq., which the Constitution's Bill of Rights guarantees. In a criminal prosecution, a pro se party of course may only appear as a defendant. In a civil case, a person may appear pro se as either a plaintiff or defendant. And, as noted, the right of self-representation in one case is protected by the Constitution, and in the other, simply by statute. Further, in contrast to criminal defendants, civil litigants unable to afford counsel cannot ordinarily obtain appointment of counsel, except in circumstances when there is a risk of loss of liberty, as in mental commitment or juvenile delinquency proceedings. See H.B. Kim, Note, Legal Education For the Pro Se Litigant: A Step Towards a Meaningful Right to Be Heard, 96 Yale L.J. 1641, 1646-47 (1987).
 
 
 14
 Moreover, the historical origins of self-representation in civil and criminal proceedings are different. In Faretta the Court discussed the historic requirement of having counsel, going back to the infamous English Star Chamber that forced counsel upon an unwilling defendant in a criminal proceeding, and the requirement's gradual reform. This reform was fervently embraced in colonial America for those accused of crime. See Faretta, 422 U.S. at 821-26, 95 S.Ct. at 2534-37.
 
 
 15
 B. History of Self-Representation in Civil Litigation
 
 
 16
 Passing from the criminal to the civil context, we begin by observing that a person appearing pro se in federal court can be a mixed blessing because persons appearing pro se lack legal training and may, on occasion, burden the court by filing illogical or incomprehensible pleadings, affidavits and briefs. And sometimes a pro se litigant appears simply for the purpose of using the courtroom to advance a political or social agenda, or to pursue a matter that is legally unredressable. See E.J.R. Nichols, Note, Preserving Pro Se Representation in an Age of Rule 11 Sanctions, 67 Tex. L.Rev. 351, 351 nn. 2 & 3 (1988). Yet, even given those potential burdens, there still remains a citizen's right of access to the courts, a strongly held notion stretching back to the beginnings of our Republic. The origins of the right to appear for oneself in civil proceedings derive from a number of sources, all deeply rooted in our history and culture. We undertake to discuss briefly five of those sources, though doubtless there are others.
 
 
 17
 First, history. Under the English common law with its complicated forms of action and veritable maze of writs and confusing procedures, the right to retain counsel in civil proceedings became a necessity. By the middle of the thirteenth century, lawyers so monopolized the courts in London that the King was forced to decree that, except for a few special causes, litigants were entitled to plead their own cases without lawyers. See Note, The Right to Counsel in Civil Litigation, 66 Colum. L.Rev. 1322, 1325 (1966).
 
 
 18
 Second, mistrust of lawyers made appearance in court without benefit of counsel the preferred course. See A.L. Downey, Note, Fools and Their Ethics: The Professional Responsibility of Pro Se Attorneys, 34 B.C. L.Rev. 529, 533 (1993). Lawyers had no position of honor or place in society in early colonial days. The pioneers who cleared the wilderness looked down upon them. For example, the Massachusetts Body of Liberties of 1641 expressly permitted every litigant to plead his own cause and provided, if forced to employ counsel, the litigant would pay counsel no fee for his services. See Charles A. & Mary R. Beard, The Rise of American Civilization 100-01 (College ed.1930).
 
 
 19
 Third, informality. In early colonial days, the rule of informality was a necessity in court proceedings since most presiding judges were not lawyers. See The Right to Counsel in Civil Litigation, supra, at 1328. By the time of the Revolution, legal proceedings had become more technical and reliance on precedent had evolved, both of which required people trained in legal interpretation. As the decades of the 18th century passed, legal questions became more complex and the need for skilled attorneys was recognized. Enough individuals had gone into law so that by the time the First Continental Congress commenced, 24 of the 45 delegates were lawyers, and in the Constitutional Convention, 33 of the 55 members were lawyers. See Beard, supra, at 101. Nonetheless, the number of lawyers although growing was still few, many judges were still laymen, and the legal process still remained sufficiently simple to permit persons whether rich or poor to plead their own causes. See The Right to Counsel in Civil Litigation, supra, at 1329.
 
 
 20
 Fourth was religion. Colonial peoples' notions of their own individual rights and their reliance on themselves were part of the movement away from religious authority and towards religious freedom. Thus, for example, the Massachusetts Bay Colony spawned dissenters such as Anne Hutchinson and Roger Williams who, declaring that the colony's leaders had not followed the pilgrims' heritage, left and obtained a charter for Providence, Rhode Island, in 1663, where they preached that every person should be allowed to follow his own conscience in matters of religion. Connecticut, Rhode Island, and the Massachusetts Bay Colony which formed the heart of New England Puritanism were part of a religious heritage characterized by a prickly independence and stubborn self reliance. See 1 Page Smith, A New Age Now Begins: A People's History of the American Revolution 22-23 (1976).
 
 
 21
 Fifth, education and literacy of colonial Americans. During the 1700s most citizens were literate and nearly everyone read a newspaper. There were numerous libraries and bookshops in Boston, Philadelphia, and New York by the time of the Revolution. See Bensen Bobrick, Angel in the Whirlwind: The Triumph of the American Revolution 47-48 (1997). This broad literacy and the people's political involvement in their democratic institutions transformed the average American into a citizen-lawyer. See id. at 49.
 
 
 22
 From all these various strands and perhaps others as well evolved the notion, perhaps best expressed by Thomas Paine, arguing in 1777 for a Pennsylvania Declaration of Rights, who said that to plead one's cause was "a natural right," pleading through counsel was merely an "appendage" to the natural right of self-representation. See Faretta, 422 U.S. at 830 n. 39, 95 S.Ct. at 2538 n. 39.
 
 C. Qualifications on the Right
 
 23
 Having explained the breadth of the right, we note some qualifications that have been placed upon it. First, the right to self-representation must be timely asserted, preferably before trial. See O'Reilly v. New York Times Co., 692 F.2d 863, 867-68 (2d Cir.1982). Second, a party seeking to assert his statutory right to self-representation must clearly and unequivocally discharge any lawyer previously retained. A party does not have a right to self-representation and representation by counsel at the same time. See id.; United States v. Mitchell, 137 F.2d 1006, 1010-11 (2d Cir.1943).
 
 
 24
 Third, and key to this appeal, because pro se means to appear for one's self, a person may not appear on another person's behalf in the other's cause. A person must be litigating an interest personal to him. See Pridgen v. Andresen, 113 F.3d 391, 393 (2d Cir.1997). For example, a lay person may not represent a corporation or a partnership or appear on behalf of his or her own minor child, see id.; Cheung v. Youth Orchestra Found. of Buffalo, Inc., 906 F.2d 59, 61 (2d Cir.1990). Thus, the threshold question becomes whether a given matter is plaintiff's own case or one that belongs to another. See Phillips v. Tobin, 548 F.2d 408, 411 (2d Cir.1976) ("The basic question raised by [28 U.S.C. § 1654] is whether this stockholder's derivative suit is the plaintiff's 'own case' or is a suit belonging to the corporation."). To that question, we focus our attention in resolving the issues presented on this appeal.
 
 II The Merits
 A. The Conversion Claim
 
 25
 With the origins of the right and its limitations and conditions in mind, we pass to the merits. To begin with, we are not persuaded by plaintiff's argument that because he was permitted to proceed pro se before the Commissioner and was consistently recognized by the Commissioner as the "SSA Claimant/Estate's Non-attorney Representative" at every stage of the administrative proceedings, he should be allowed to proceed pro se in the district court under 42 U.S.C. §§ 405(g) & 406(a). Section 406(a) of Title 42, which permits non-attorneys to represent claimants, applies only to administrative proceedings before the Commissioner. Section 406, which is entitled "Representation of claimants before Commissioner of Social Security," states in relevant part:
 
 
 26
 The Commissioner of Social Security may prescribe rules and regulations governing the recognition of agents or other persons, other than attorneys as hereinafter provided, representing claimants before the Commissioner of Social Security ....
 
 
 27
 42 U.S.C. § 406(a)(1) (emphasis added). The plain language of the statute indicates that Congress only authorized the Commissioner to recognize non-attorneys representing claimants in proceedings held before the Commissioner. There is no parallel provision in the Act authorizing the Commissioner to permit non-attorney representation of claimants in proceedings before the courts.
 
 
 28
 Further, § 405(g), which establishes procedures for judicial review of the Commissioner's final decision, provides in relevant part:
 
 
 29
 Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party ... may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice....
 
 
 30
 42 U.S.C. § 405(g). This statutory provision does not address the specific procedural issue of whether a claimant may proceed pro se but simply grants a claimant the right to appeal a final decision of the Commissioner, as plaintiff has done here.
 
 
 31
 We agree with the district court's dismissal of plaintiff's claim, on behalf of Peter's estate against Marie Law, because clearly plaintiff was purporting to represent the estate in litigating an interest specific to the estate, that is, whether Law misappropriated social security benefits payments intended for Peter Iannaccone when he was living. In Pridgen we held that a representative of an estate may not proceed pro se in an action by the estate where the estate has beneficiaries or creditors other than the representative. 113 F.3d at 393. Under such circumstances, an action cannot be described as the litigant's own, because the personal interests of the estate, other survivors, and possible creditors, as here, will be affected by the outcome of the proceedings. A non-lawyer representative therefore would be litigating claims that are not personal to him. Because plaintiff admitted in his brief that there are creditors of the estate, i.e., the physicians who treated his father prior to his death, the rule we have adopted applies to his claim against Marie Law brought in his capacity as administrator of the estate and the district court properly dismissed it.
 
 
 32
 B. The Underpayment Claim Against the Commissioner
 
 
 33
 While plaintiff, as the administrator of the estate, does not have the right to proceed pro se with the estate's claim against Law, he, as the sole surviving child of the deceased beneficiary, has the statutory right to proceed pro se with his underpayment claim against the Commissioner. The record shows that this case was brought originally before the Commissioner by plaintiff pursuant to 42 U.S.C. § 404(d) for underpayment of social security benefits that were due his deceased father.
 
 
 34
 Section 404(d) and its implementing regulation, 20 C.F.R. § 404.503, authorize distribution of underpayment by the Commissioner to certain individuals according to an established order of priority when the eligible beneficiary dies before the payment due is made. The deceased beneficiary's surviving spouse is the first person on the priority list, the spouse is then followed by the child or children of the deceased beneficiary. The seventh and last individual in the statutory order of priority is the legal representative of the estate of the deceased beneficiary. But the estate is not entitled to receive the benefits unless there is no individual who falls under any of the preceding categories of eligible claimants. See 42 U.S.C. § 404(d); 20 C.F.R. § 404.503.
 
 
 35
 Peter Iannaccone's wife Mamie predeceased him. Plaintiff, as decedent's sole surviving child, and not the estate, is the only claimant entitled to receive the underpayment by the Commissioner that was due Peter Iannaccone, the deceased beneficiary. Although the pleadings filed in the district court indicate that this was an action brought by "the Estate of Peter Iannaccone, by William Iannaccone, Administrator and Claimant," this claim was actually brought by plaintiff on his own behalf involving an interest personal to him because he is the only one entitled to receive the disputed underpayment under the Act. Cf. Cheung, 906 F.2d at 60 (finding that case was brought on behalf of the father's minor daughter under various civil rights statutes, even though the complaint was solely in the father's name, and holding that father could not bring the case pro se ).
 
 
 36
 Indeed, the Commissioner concedes in his brief that "plaintiff's role in the administrative proceedings was that of a party in interest, rather than that of a non-attorney representative." The record also shows that when the Commissioner approved plaintiff's application for amounts due his father, it sent a notification letter to plaintiff in May 1992, which stated that "[y]ou will soon receive a check for $4814.00 because we owed money to Peter Iannaccone deceased." The action commenced in the district court sought review of the Commissioner's final decision and involved essentially the same claim for underpayment that plaintiff litigated in the administrative proceedings below. Therefore, the action in the district court should have been deemed plaintiff's own case and not a suit belonging to the estate of plaintiff's father.
 
 
 37
 Unlike the estate's claim against Marie Law, where the interest of the estate was being litigated, here it is only plaintiff's own interest being litigated because the estate and its creditors are not entitled to the amount of underpayment in dispute. No other person's interests will be affected by the outcome of the proceedings. Hence, the fact that the estate has outside creditors in this case is irrelevant in determining whether plaintiff himself may proceed pro se in his own claim against the Commissioner in the district court.
 
 
 38
 Having decided that plaintiff may properly appear on his own behalf without counsel in this proceeding, we decline to address plaintiff's arguments regarding the merits, including the failure of the ALJ to fully develop the record and the issue of whether Law was a proper defendant in this case, because these issues are not properly before us.
 
 CONCLUSION
 
 39
 Accordingly, for the reasons stated, we reverse the district court's judgment insofar as it dismissed plaintiff's pro se claim against the Commissioner, and remand that case for further proceedings in the district court where plaintiff may plead and conduct his own case personally; and, affirm the judgment insofar as it dismissed plaintiff's action against defendant Law as violative of N.Y. Judiciary Law § 478, because plaintiff is a non-lawyer.